IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**JUAN HIDALGO**,

        **Petitioner,**

v.                                   Case No.: 1:20-cv-00177

**C. MARUKA, Warden,**

        **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Juan Hidalgo's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 and Respondent C. Maruka's request that the action be dismissed (ECF Nos. 1, 6). This case is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241; **GRANT** Respondent's request to dismiss; and **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

**I.**      **Factual and Procedural Background**

Hidalgo is a federal inmate incarcerated in Federal Correctional Institution ("FCI") McDowell in Welch, West Virginia. On March 10, 2020, Hidalgo filed the instant action challenging his loss of good conduct time ("GCT") and privileges following a

1

determination that he had committed a prohibited act. (ECF No. 1). The finding arose from an investigation following an incident that occurred on September 15, 2020, when a Correctional Officer discovered what was later determined to be a medicated suboxone strip in a folded piece of paper on top of the locker in Hidalgo's cell. (ECF No. 1 at 1–2). According to Hidalgo, on September 16, 2018, he received an incident report, No. 3170090, charging him with committing Prohibited Act Code 113. (*Id.* at 2). He asserts that he received a rewritten version of the report on September 27, which included additional information. (*Id.*). He was interviewed by a Correctional Counselor on October 9, and on October 10, 2018, he appeared before the Disciplinary Hearing Officer ("DHO"). (*Id.*). At his hearing before the DHO, Hidalgo argued that he was not aware of the suboxone and that the officer must have confused his cell with that of another inmate, but he provided no evidence to support that claim. (ECF No. 6-1 at 18). The DHO found that Hidalgo had indeed violated prison rules forbidding drug possession and sanctioned him by disallowing 41 days of accrued good conduct time and revoking phone privileges for six months, as well as ordering him to serve 28 days in disciplinary segregation. (*Id.*). He appealed this decision, and on January 21, 2020, his appeal to the Central Office, his last available administrative remedy, was denied. (ECF No. 1 at 2). Subsequently, he filed this action.

In his petition, Hidalgo asserts that he has a liberty interest in his GCT and articulates the standard under which due process claims concerning revocation of GCT are evaluated. (ECF No. 1 at 2–3). He then briefly explains the BOP's process for handling disciplinary matters. (*Id.* at 3–4). He postulates that in the proceedings concerning his incident report, he was not afforded all the procedural rights to which he is entitled under the standard set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). (*Id.* at 4). He contends

that he was not timely provided with the written incident report, because he was given a rewritten version of the report more than 24 hours following the alleged incident, in contravention to the regulatory timeframe established under 28 C.F.R. § 541.5(a) which provides that inmates will "ordinarily receive the incident report within 24 hours of" prison staff learning of the inmate's involvement in an incident. (*Id.* at 5). He further asserts that there is no evidence that he placed the suboxone strip in his cell, that he was unaware of it, and that it must have been planted by another inmate. (*Id.* at 6). He directs the Court's attention to the Supreme Court's holding in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985), in which the Supreme Court held that a prison disciplinary decision comports with due process if some evidence supports it. (*Id.*).

On March 26, 2020, the undersigned ordered Respondent to answer Hidalgo's petition. (ECF No. 5). Respondent's response was filed on May 4, 2020. (ECF No. 6). Therein, Respondent agrees with Hidalgo's basic version of the facts leading to the incident report and subsequent sanction by the DHO, but insists that the institutional process afforded to Hidalgo did comport with due process requirements. (*Id.* at 6). According to Respondent, the disciplinary process for inmates within federal custody is delegated to the Bureau of Prisons ("BOP") by statute, 18 U.S.C. § 4042. (*Id.* at 2). Regulations promulgated pursuant to this authority, found at 28 C.F.R. § 500 *et seq.*, further explain the process the BOP employs. (*Id.* at 2–4). In essence, when a staff member has a reasonable belief that an inmate has violated BOP regulations, the staff member prepares an incident report, which is then investigated by staff, reviewed by a Unit Discipline Committee ("UDC"), after which, if the charges are serious, is referred to the DHO. (*Id.* at 2–3). The DHO provides a hearing for which inmates can request a staff representative, and may call witnesses, make a statement, and present evidence, after

which the DHO determines whether the inmate violated regulations based on "at least some facts." (*Id.* at 3–4).

Respondent concedes that Hidalgo's original report contained a mistake because it referenced two different cell numbers, which necessitated drafting of a rewritten report that was delivered to Hidalgo on September 28, 2018. (ECF No. 6 at 5–6). However, he asserts that under the due process requirements articulated in *Wolff*, an inmate must be served with a copy of the incident report within 24 hours of the hearing, not within 24 hours of the alleged incident as Hidalgo claims. (*Id.* at 7). Respondent further insists that Hidalgo was provided an opportunity to make a statement on his own behalf, and he received a neutral and detached hearing as required by *Wolff*. (*Id.* at 7–8). Respondent also addresses Hidalgo's allegation that the DHO made her decision based on insufficient evidence, countering that the evidentiary standard under *Hill*, which only requires that there be "some evidence" to support the DHO's conclusion, is satisfied by the evidence in the incident report and Hidalgo's statement at the hearing. (*Id.* at 8–9). Respondent requests that the Court dismiss Hidalgo's petition. (*Id.* at 9).

On May 4, 2020, the undersigned ordered Hidalgo to reply to Respondent's response within 60 days. (ECF No. 7). However, the deadline has since lapsed without a reply.

## II. Standard of Review

Respondent does not identify the standard under which he seeks dismissal of Hidalgo's petition; however, Respondent filed the response concurrently with the request for dismissal. Therefore, the request should be treated as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion for judgment on the pleadings applies the

same standard of review as a motion to dismiss filed under Rule 12(b)(6), and both motions may be filed in habeas actions. (*Id.* at 138–39); *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. (*Id.*) The court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

#### A. *Due Process*

The Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment") protects inmates from deprivations of life, liberty, or property without due process of law. *Wolff,* 418 U.S. at 556. Hidalgo has a

constitutionally protected liberty interest in his GCT, as such time impacts the duration of his sentence. *See, e.g. Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at *5 (S.D.W. Va. Jan. 5, 2015) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). Accordingly, when a federal prisoner is subject to a disciplinary proceeding that may result in the loss of GCT, the prisoner is guaranteed certain minimal requirements of procedural due process, including:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff,* 418 U.S. at 563–567). The DHO follows a procedure that incorporates these due process protections. *See* 28 C.F.R. § 541.8.

Here, Hidalgo asserts that he "was not afforded all the required procedural rights under *Wolff*" because he was served with the rewritten incident report more than 24 hours after staff became aware of the incident. (ECF No. 1 at 4–5). According to Hidalgo, failure to adhere to the BOP's regulation at 28 C.F.R. § 541.5(a) concerning the timely service of incident reports violated his due process rights. (*Id.* at 5). However, "failure to follow prison rules or regulations does not, without more, give rise to a constitutional violation." *Weatherholt v. Bradley*, 316 F. App'x 300, 303 (4th Cir. 2009) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996)). As Respondent notes, due process in the context of prison disciplinary matters under *Wolff* does not require service of an incident report within 24 hours of the alleged incident, but rather, at least 24 hours in advance of the DHO hearing. (ECF No. 6 at 7); *Wolff,* 418 U.S. at 564. Even so, as Hidalgo alleged and Respondent concedes, he was in fact served with an incident report within 24 hours

6

of the Correctional Officer's discovery of the suboxone strip when he was given the original incident report on September 16, 2018. (ECF No. 1 at 2). Although the rewritten report correcting the error in identifying Hidalgo's cell number was not provided to him until September 27, (*Id.*), this service was still well in advance of his October 10, 2018 hearing before the DHO, allowing him "a chance to marshal the facts in his defense and to clarify what the charges [were]." *Wolff* at 564.

Even if this Court were to agree that failure to present Hidalgo with a flawless incident report within 24 hours of the incident was error, "[p]rocedural errors in disciplinary proceedings are subject to harmless error review." *Lennear v. Wilson,* 937 F.3d 257, 276 (4th Cir. 2019). An error is harmless "when it does not prejudice an inmate's preparation or defense at a hearing." *Id.* (citations omitted). It is clear in this case that Hidalgo's right to present evidence in his defense was not harmed or impaired by failure— assuming that such a failure occurred—to serve him with the incident report sooner. The evidence provided to Hidalgo in the original incident report formed the basis of the charge against him and allowed him about three weeks to prepare a defense.

Hidalgo asserts no other basis for his conclusion that the disciplinary procedure was inadequate to protect his rights. Therefore, the undersigned **FINDS** that the disciplinary procedure afforded to Hidalgo comports with due process and he is accordingly not entitled to relief from the DHO's findings.

### B. *Sufficiency of the Evidence*

Hidalgo asks for relief in part based on his assertion that the evidence relied upon for the DHO's finding is insufficient. (ECF No. 1 at 6). This Court relies on the evidentiary standard set forth in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985). In *Hill*, the Supreme Court held that revocation of GCT in a prison disciplinary proceeding

does not satisfy the requirements of due process "unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* at 454. This standard is "extremely broad in scope and presents a very low burden for prison officials to meet." *Tyler v. Hooks*, 945 F.3d 159, 171 (4th Cir. 2019), cert. denied, 140 S. Ct. 2785 (2020). Nevertheless, "if 'some evidence' is to be distinguished from 'no evidence,' it must possess at least some minimal probative value if it is to be found adequate to satisfy the requirement of the Due Process Clause." *Id.* (quoting *Goff v. Burton*, 91 F.3d 1188, 1192 (8th Cir. 1996)).

The evidence in Hidalgo's case, as summarized in the DHO Hearing Report, includes statements by the reporting officer with the officer's description of the search of Hidalgo's cell and discovery of the orange strip, a memorandum from a registered nurse identifying the strip as suboxone, Hidalgo's statement that it was not his suboxone and that the reporting officer must have confused his cell with that of another inmate, and a photo of the suboxone strip found in Hidalgo's cell. (ECF No. 6-1 at 18). Even if the evidence against Hidalgo, like the evidence presented in *Hill*, "might be characterized as meager," *Hill*, 472 U.S. at 457, it still constitutes the requisite "modicum of evidence" in order "to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455.

The "some evidence" standard provides an extremely limited opportunity for judicial review of prison disciplinary matters, and the Fourth Circuit recently had occasion to explore its outer bounds. In what it cautions is a "very rare case," in *Tyler v. Hooks*, the Fourth Circuit held that federal habeas relief was available to restore Casey Tyler's GCT "due to a total absence of evidence in the record, even under the 'some evidence' standard" that the inmate had committed the act with which he had been

8

charged. 945 F.3d at 173. There, the only evidence in the record were "conclusory statements of culpability" by officers that Tyler had made false allegations about a staff member, rather than "affirmative evidence of Tyler's guilt." *Id.* at 172. These statements were deemed insufficient evidence, because they were essentially just accusations rather than a basis "for a reviewing officer to make a reasoned and independent judgment on the matter at issue." *Id.* (citations omitted).

The instant action is not like the "rare case" the Fourth Circuit described in *Tyler*. The Fourth Circuit has upheld an inmate's conviction for possessing escape tools based on the unsworn statement of an anonymous informant, where the only additional evidence was that escape tools were found in the prison, and the inmate had previously escaped from a different prison. *See Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *see also Payne v. Craig*, No. CIV.A. 5:08-0989, 2011 WL 4021321, at *3 n.3 (S.D.W. Va. June 30, 2011), *report and recommendation adopted*, No. 5:08-CV-00989, 2011 WL 4021320 (S.D.W. Va. Sept. 9, 2011) (upholding sanctions for fighting based on statement of other involved inmate and injuries consistent with the inmate's assertions); *Graham v. Warden of FCI-Cumberland*, No. GJH-16-2895, 2017 WL 4217105, at *5 (D. Md. Sept. 20, 2017) (upholding DHO finding based on account of inmates that the petitioner engaged in a fight). Districts in this Circuit have routinely held that the "some evidence" standard is met with evidence as limited as that upon which the DHO relied at Hidalgo's hearing. *See, e.g., Masengale v. Streeval*, No. 7:19-CV-543, 2020 WL 4227559 (W.D. Va. July 23, 2020) (holding that "some evidence" standard was met when DHO considered the charging officer's report that contraband was found in the inmate's possession and positive identification of the substances); *Murray v. Tina*, No. 5:18-CT-3026-FL, 2020 WL 1490696 (E.D.N.C. Mar. 24, 2020) (finding that "some evidence" supported

disciplinary sanction when shank was found in cell despite inmate's testimony that he did not know the shank was there and it must belong to former occupant); *Edmonds v. Ziegler*, No. 5:10-cv-01374, 2014 WL 321050 (S.D. W. Va. Jan. 29, 2014) (finding that the "some evidence" standard is met when weapon found in cell even when petitioner claimed he had no knowledge of it).

     Hidalgo cites to a Fourth Circuit case, *McClung v. Shearin*, 90 F. Appx. 444 (4th Cir. 2004), for his proposition that the evidence against him was insufficient because the DHO did not consider that his cell door was unsecured and that another inmate could have placed the suboxone strip on his locker. (ECF No. 1 at 7). According to him, there were 120 inmates roaming free prior to the search of his cell. (*Id.*). However, his argument in reliance on *McClung* is unavailing here. In *McClung*, the Fourth Circuit held that a genuine issue of material fact sufficient to defeat a motion for summary judgment arose when the inmate had insisted from the very beginning of his disciplinary process that his cell was unsecured and many inmates had access to it. Here, Hidalgo made no such claim during his DHO hearing, stating only that the officer who discovered the suboxone in his cell must have confused it with the cell of another inmate and provided no documentation, testimony, or evidence that his cell had been unsecured and frequented by anyone other than himself. (ECF No. 6-1 at 18). The Eastern District of Virginia recently addressed the applicability of *McClung* in a case in which an inmate was convicted of violating Code 113 after suboxone was found stuffed into the arms of the toilet paper holder in the inmate's cell. *Lerma v. Wilson*, No. 3:17-CV-588, 2018 WL 3134305 (E.D. Va. June 1, 2018), *report and recommendation adopted*, No. 3:17-CV-588, 2018 WL 3130405 (E.D. Va. June 26, 2018). There, when the inmate asserted for the first time in the proceedings of his § 2241 petition that the cell doors were not secured and other inmates could have entered, the

court found that *McClung* did not bear on the sufficiency of the evidence used to find him responsible. *Id*. Likewise, in this case, Hidalgo offers no evidence that anyone else accessed the cell and did not make this argument before the DHO. He does not dispute the reporting officer's characterization that the cell where the suboxone was found "solely housed inmate Hidalgo," (ECF No. 1 at 1–2), and this Court will not disturb the factual findings of the DHO for failure to consider evidence and arguments that Hidalgo did not introduce. *See also McClung v. Hollingsworth*, No. 06-6699, 2007 WL 1225946 (4th Cir. Apr. 26, 2007) (affirming the District Court's disposition based on its finding that the inmate did not provide evidence that his cell was not his "exclusive domain") ("The Due Process Clause does not require continuous lock-down before allowing punishment for possession of contraband found in inmates' cells."); *Mederos v. Warden, FCI Edgefield*, No. CV 4:19-2770-BHH-TER, 2020 WL 4289612 (D.S.C. July 6, 2020), *report and recommendation adopted*, No. CV 4:19-2770-BHH, 2020 WL 4288375 (D.S.C. July 27, 2020) (finding that the constructive possession rule provided "some evidence" even when the contraband was found in a bunk that did not belong to the inmate).

This Court need not delve deeply into Hidalgo's contention that the method used to identify the orange strip as suboxone was insufficient and the material should have been sent to an independent laboratory for further testing. (ECF No. 1 at 7). This does not inform the issue before the Court as to whether "some evidence" supported the DHO's finding. "[I]t is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all." *Masengale*, 2020 WL 4227559 at *4. In accordance with the above precedent, it is clear that "some evidence" supports the DHO's decision. Therefore, the undersigned **FINDS** that the evidence used by the DHO is

sufficient and Hidalgo is not entitled to relief from the DHO's finding.

## IV. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Hidalgo's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) be **DENIED,** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** November 4, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge